(Superior Court of Cincinnati—*General Term.*)

THE CITY OF CINCINNATI, for the use of John F. Deters *v.* THE STAND-
ARD WAGON CO. ET AL.—SAME *v.* GEORGE WAGNER ET AL.—SAME *v.*
JACOB DROTT ET AL.—SAME *v.* REES McDUFFIE ET AL.—SAME
*v.* WARREN WILDER ET AL.

*Classification of sewers under the municipal code of Cincinnati.*

1. The municipal code divides sewers into two classes, viz.: (1) Main, principal or trunk
   sewers, and (1) local, lateral or branch sewers. Sub-main sewers belong to the first
   class.
2. The only definition of a main or trunk sewer found in the code is that it shall have its
   outlet in a river or other proper place. Such other proper place may be another
   sewer.
3. A local sewer is one "intended for and used exclusively for the drainage and accommo-
   dation of lots abutting thereon." If therefore a sewer receives the drainage of sew-
   ers in other streets, it is a main or trunk sewer and not a local sewer.
4. The mere fact that a sewer, otherwise local, drains also the surface water from the street
   in front of the abutting lots, does not change its character as a local sewer.

(Decided April 9, 1895.)

SMITH, J.

These cases were before this court last term upon a demurrer to the pe-
tition, at which time it was determined that the act under which the
proceedings were had and the assessments made which it is now sought to
recover, applied only to trunk sewers, and that consequently in case any of
the sewers constructed did not belong to that class, the assessments could
not be recovered. 1 Ohio Nisi Prius Reports, 53.

Thereupon, the cases having been sent back to Special Term, were heard
upon the evidence and have been again reserved to General Term upon such
evidence for the purpose of determining whether all of the sewers are trunk
sewers, and if not, which of them do not belong to that class.

So far as we are advised, this is the first occasion in which a court of
this state has been called upon to define a trunk sewer within the mean-
ing of our municipal code relating to the subject of sewers.

This is due to the fact that the proceedings under the municipal code
for the construction of trunk or other sewers are the same, and that the lim-
it placed by law upon the amount assessable upon the abutting property
is the same, viz.: (1.) That the assessment shall not exceed two dollars
per front foot (section 2384) ; (2) that the the assessment shall not exceed
the sum that would be required to construct an ordinary street sewer or
drain of sufficient capacity to drain or sewer such lots or lands; (3) that no
lot or land shall be assessed that does not need local drainage or which is
then provided therewith (section 2380). *The City of Toledo ex rel.* v. *L. S. &*
*M. S. Ry. Co. et al.,* 4 O. C. C., 113.

It would seem, however, that when the assessments are according to
benefits, the question whether a sewer was a trunk sewer or a local sewer
might become important with respect to the right to assess property not
abutting on a local sewer (section 2385). But we are not advised of any
case in which the question has been raised.

Inasmuch, however, as the act of March 12, 1887, (84 Ohio Laws, 75),
under which the proceedings were had and assessments made in this case,
related only to trunk sewers, and gave the board of public affairs exclu-
sive jurisdiction in the matter, and dispensed with any action or concur-
rence of council in any of the proceedings, the question whether the sew-
ers constructed are trunk sewers is a vital question, because if they are not,
then inasmuch as council omitted to take the step, ordinarily a jurisdic-

tional one, of passing the resolution declaring the necessity of the improvement, the assessment would be void. *Welker* v. *Potter*, 18 Ohio St. 82.

The statutes mention a number of classes of sewers, viz., trunk, main, principal, sub-main, local, lateral and branch sewers.

Of these classes there is no difficulty in declaring at once that trunk, main and principal sewers are synonymous terms, and designate the same kind of sewers. Sections 2370 and 2371. But the only approach to a definition of them is found in section 2370, where they are said to have "their outlet in a river or other proper place." This description of them, however, is ambiguous and unsatisfactory because of the absence in the statute of any declaration as to what is meant by "other proper place."

A "sub main sewer" would seem to be what its title indicates, viz., belonging to the class of main sewers, but subsidary to them. Section 2395.

It will also appear, we think, from a careful examination of the municipal code, that "local," "lateral" and "branch" sewers are synonymous. Thus in section 2395, lateral and branch sewers are referred to in the disjunctive form as meaning the same class; and in section 2397 branch and local sewers are referred to in the same way; and in the trunk sewer act lateral and branch sewers are referred to as the same thing. Other instances might be cited to the same effect, but we think the question beyond sesious dispute and do not stop now to cite such instances.

A further examination of the statutes will also confirm the conclusion that the law contemplates but two kinds of sewers, viz: (1) Trunk sewers, or, what is the same theng, main or principal sewers; and (2) local sewers, or what is the same thing, branch or lateral sewers.

Thus section 2377 provides that after the plan of sewerage has been approved, the council may direct the engineer to make an estimate of the cost of construction of the work according to such plan, and report to council what "portion of the same will be required for main sewerage for any lot and lands to which any portion of such main sewer may serve as a local sewer."

In providing for an assessment to pay for the sewer, the statute provides, in section 2379, for the assessment for the construction of main sewers upon the lots or lands abounding or abutting the streets in which the same shall pass; and in section 2380 says the assessment shall not exceed the sum that would, in the opinion of the council, be required to construct an ordinary street sewer or drain of sufficient capacity "to drain or sewer such lots or lands; nor shall any lots or lands be assessed that do not need local drainage, or which are then provided therewith."

In section 2481, which relates to the subjects of assessments for local sewerage, the two kinds of sewerage, viz., main and local, are again recognized.

In section 2382, which provides for the manner of determining the amount to be assessed per front foot, it is declared that this result is to be reached by taking the total cost of "constructing the main and lateral sewers and drains, etc., and dividing such cost by the number of feet front subject to assessment," thus recognizing that the two classes of main and lateral sewers would cover every class that could be constructed.

And in section 2386, which provides for assessment by benefits, the same two classes are recognized by declaring that

" The assessors shall make a report in writing specifying the amounts assessed by them upon each lot or parcel of land for main or local sewerage separately."

And section 2392, which declares that council may assess any part of the construction of a sewerage system upon the tax list of the county, what-

ever the mode of assessment adopted may be, distinctly recognizes only two classes of sewers.

Section 2392 is as follows:

"After making an assessment for main or local sewerage according to valuation or according to feet front, or after the confirmation of any assessment for main or local sewerage according to benefits, the council may order such percentage of the assessment for main sewerage as may be necessary to pay the estimated cost of such portion of any main sewer, as provided for in this subdivision, which it may determine to construct, together with the total assessment for local sewerage for such portion of any main sewer, whether the assessment be by valuation, by benefits or by the feet front to be certified to the auditor of the county in which the corporation is situated, to be placed on the tax list and collected as other taxes."

And after defining a local sewer in section 2397, the statute declares, in section 2398, that the proceeding for the establishment and construction of local sewers shall be as directed in previous sections "regulating the establishment and construction of local sewers and connection with main sewers."

In view of these various statutory provisions, so clearly recognizing but two classes of sewers, we are of the opinion that there can be no more doubt in regard to this classification by the statute than if the statute by these express terms, had declared that there should be but two classes.

But, however unsatisfactory the statutory description or definition of a trunk sewer may be, we find a much more definite description of a local sewer, and one which enables us, with a reasonable certainty, to determine whether a sewer, in a given case, is a trunk sewer or a local sewer. Thus, in section 2397 it is said:

"But no sewer shall be considered local except such as are intended for and used exclusively for the drainage and accommodation of lots abutting thereon."

We have here given a test by which to determine the character of a sewer. If it is "intended for and used exclusively for the drainage and accommodation of lots abutting thereon," it is a local sewer; otherwise it is a trunk sewer. Neither the size of the pipe nor the material from which it is made are important in determining the question, except as they may possibly throw light upon the intention and use of the sewer with reference to draining abutting lots only or other lots not abutting upon the sewer.

By the application of the above test to the cases at bar it will be found that some of the sewers are trunk sewers and others are local sewers, because some are connected with and receive the drainage brought by sewers from intercepting streets, and are therefore trunk sewers; while others are intended for and drain only the lots abutting upon the sewer, and are therefore local sewers.

It is contended by plaintiff that all of the sewers in this case are trunk or main sewers, for the reason that all of them drain not only the lots abutting upon them, but also carry off the surface drainage from the streets themselves, and that, therefore, they cannot be local sewers within the definition of a local sewer, as contained in section 2397, viz:

"No sewer shall be considered local except such as are intended for and used exclusively for the drainage and accommodation of lots abutting thereon."

In disposing of this contention there are several considerations to be borne in mind:

1. The fact that the public derives a benefit from the sewers estab-

lished for the drainage of lots abutting on them, does not of itself withdraw such sewers from the category of local sewers. If such were the case there could be no local sewers. Because, while it may be true that a local sewer probably confers on abutting lot owners a greater benefit than upon anyone else in the community, yet it is also true that they confer a benefit upon the public at large, because the failure to drain and sewer the abutting lots would result in a public nuisance to the detriment of the comfort and health of the community. ·The fact, therefore, that the public is also benefited, does not make such sewers any the less within the meaning of the statute "intended for and used *exclusively* for the drainage and accommodation of lots abutting thereon." The word "exclusively" is intended not to exclude the public, but to exclude other lots.

2. The street is not a lot by itself distinct from the abutting lots. What the public owns is a mere easement in the street, and not the land itself over which the easement obtains. As a general rule this land belongs to the abutting lot owners and is a part of their lots. This proposition has been regarded as settled beyond dispute in this state since the case of *Street Railway Company* v. *Cumminsville*, 14 Ohio St. 546, where it is said:

"But while our decisions have been thus liberal in allowing to the general assembly the largest discretion in the management and control ·of easements acquired for public highways, we have been very careful to say, in the case to which reference has been made, as well as upon other occasions, that they could not be diverted to other purposes than those for which they were acquired; nor enlarged so as to accumulate additional burdens upon the land, or destroy or impair the incidental rights of the owner, appurtenant to his lands located upon the street or highway. The distinction lies between those things which fairly belong to the grant, and those which are reserved to the owner, or by law attach as incidents to his property. For this purpose there is no occasion to distinguish between lands acquired for ordinary highways, leaving the fee in the owner, and lands dedicated for streets in towns where the fee rests in the municipal corporation in trust to answer the purpose of the use. In either case the interest acquired and used by the public at large, is an easement of a definite character, and held for the attainment of known objects, and in either case distinct from the right of the public to use the streets is the right and interest of the owners of lots adjacent."

Bearing in mind this ownership in the streets by the adjacent lot owners, we think a sewer which drains only the lots abutting and the street upon which such lots abut, is nevertheless a local sewer, because it cannot be said, within the meaning of our sewer law, to drain any other lots than those abutting upon it.·

3. Generally speaking, unless the surface water of streets is drained off of them, it either accumulates in the streets and creates a nuisance, or it flows upon the abutting lots. It is true that in exceptional cases all of it may not flow upon abutting lots, but may, by reason of the contour of the land, flow down the street upon other land. But such cases are exceptional, and there is no evidence in this case to show that the surface water of these streets takes this exceptional course.

It is also undoubtedly the law, that a city is not compelled to take care of the surface water·in the street; that surface water is a common enemy, and if the abutting lot owners wish their lots protected from surface water from the streets, they must themselves keep off such water. *Springfield* v *Spence*, 39 Ohio St. 665.

In view of these facts and the law applicable to them, it would seem that generally speaking the drainage of the surface water of a street was "exclusively" for "the accommodation of lots abutting thereon," and that

no other lots were accommodated by such drainage. A local sewer, therefore, draining abutting lots, becomes none the less a local sewer because it drains the surface of the street; because such drainage still brings it within the definition of a local sewer, it being exclusively for the accommodation of the lots abutting upon it, and not for the drainage and accommodation of any other lots.

In view of the distinction we have made between trunk and local sewers, we have not thought it necessary to specifically point out in the opinion those sewers in this case which are trunk sewers and those which are local sewers. We think that question of fact can be determined by counsel as well as by ourselves. In case, however, a dispute arises between counsel in drawing the decree, we will, if the matter is referred to us, determine the character of the sewer in controversy.

HUNT and MOORE, JJ., concur.

*Drausin Wulsin* and *John Galvin*, for plaintiff.

*Healy & Brannan* and *Reuben Tyler*, for defendants.